246 P.3d 5 (2010)
239 Or. App. 284
Shadman AFZAL, Petitioner,
v.
PUBLIC EMPLOYEES RETIREMENT BOARD, Respondent.
800473; A140775.
Court of Appeals of Oregon.
Argued and Submitted May 26, 2010.
Decided December 1, 2010.
*6 Nelson R. Hall, Portland, argued the cause for petitioner. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.
Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before SCHUMAN, Presiding Judge, and WOLLHEIM, Judge, and ROSENBLUM, Judge.
ROSENBLUM, J.
Claimant filed an application with the Public Employee Retirement System (PERS) for disability retirement allowance after resigning from a 16-year career with Multnomah County. PERS administratively denied his claim, concluding that claimant was not entitled to a disability allowance because he failed to prove that he was disabled to such an extent that he was unable to perform "any work for which qualified." ORS 238.320(3); OAR XXX-XXX-XXXX(1). After a hearing, an administrative law judge (ALJ) upheld the denial of disability allowance, and the Public Employees Retirement Board (PERB) entered a final order affirming and adopting the ALJ's findings and conclusions. Claimant seeks judicial review of PERB's final order. Because this case involves undisputed facts, we review for substantial reason and errors of law. ORS 183.482(8)(a), (b); Lenon v. PERB, 228 Or.App. 20, 25, 206 P.3d 1165, rev. den., 347 Or. 365, 222 P.3d 1091 (2009). On the basis of that review, we reverse and remand.
The facts are taken from PERB's final order as supplemented by the record. Claimant is a 47-year-old man with a dual degree in administration of justice and psychology. Before working for the county, claimant worked for many years in fast food restaurant management. In December 2006, claimant resigned from his job with Multnomah County. For approximately the first five years of his 16-year career with the county, claimant was a parole and probation officer. For the remainder, and before his resignation, claimant had been working as a community justice managera supervisory position in which he oversaw two units of parole and probation officers.
Claimant's most recent salary was $78,881.28. His duties involved office work and holding meetings with department members, management, outside partners, and staff; he was required to participate in a number of activities that could be physically demanding. For example, claimant actively participated in making arrests, transporting, and attending home visits of probationers, which could involve conducting searches. Claimant's position required him to carry a firearm; he was therefore required to pass a quarterly firearm certification exam with the county training department. He was also required to pass an annual certification exam in defense tactics.
From October 2002 through January 2008, claimant saw an internist, Dr. Frank Fric, to address symptoms that were causing him to have problems at work, including dizziness, heaviness in the head, unstable gait, and weakness. By early 2006, claimant's symptoms had progressed to the point that they began to cause more noticeable complications at work. Claimant's colleagues expressed concern about changes in his decision-making ability and attention to detail. He often seemed confused, fatigued, and inattentive; on several occasions he nodded off during meetings.
Also in 2006, claimant developed physical complications, including walking with a limp and dragging his left leg. Due to the training department's concerns about those physical problems, he lost his privilege to carry a firearm. He began seeing neurologist Dr. Bruce Bell on May 22, 2006. After that initial visit, Bell opined that claimant could have "some sort of unusual dystonia or possible early Parkinson disease to explain the gait problems. He may have a mild seizure disorder." Claimant's internist, Fric, also noted in a subsequent visit that claimant's condition had worsened, developing into "basically uncontrollable non-symmetric movements of the entire body, arms, legs. Observing *7 him sitting in [a] chair, he is moving up and down on the chair, almost sliding off."
After resigning from his position as a community justice manager on December 8, 2006, he and his wife, from February 2007 through December 2007, operated a business selling watches and clocks from a cart inside a shopping mall. Claimant worked at the cart for a short time but had to stop because he was having problems focusing and staying alert. He was also having difficulty standing and otherwise being able to physically assist customers.
On January 30, 2007, claimant filed an application with PERS for disability retirement allowance. On his application, claimant listed his condition as "Parkinson'sdopamine sensitive dystonia." In response to a PERS request, his internist, Fric, opined that claimant was first 100 percent disabled January 22, 2007, and that claimant was unable to perform any work for which he was qualified.
In addition to Fric, neurologist Bell provided medical information to PERS regarding claimant. Bell reported claimant's condition as Parkinson's and opined that claimant was 100 percent disabled and unable to do his current job. In a letter to PERS dated March 23, 2007, however, Bell wrote that, "[i]f [claimant] had some sort of sedentary work which did not require stress, he might be able to do that." After subsequent examinations of claimant and in letters to PERS and claimant's lawyer, Bell continued to opine that claimant was 100 percent disabled and was no longer able to perform his current job.
At PERS's request, neurologist Dr. Lynne Bell examined claimant on August 15, 2007. She opined that, "[b]ased on [claimant's] current clinical presentation, he would be capable of performing a desk job." After reviewing additional medical records, she wrote in a letter dated February 11, 2008, that her previous opinion of claimant's condition was unchanged, and that she believed claimant had a "functional gait disorder."
PERS administratively denied claimant's application for a disability allowance on September 11, 2007, based on Lynne Bell's report that claimant could do a desk job. After a contested case hearing, the ALJ upheld the denial, which PERB later affirmed. Claimant now seeks judicial review of PERB's final order.
Before addressing the parties' arguments on judicial review, we review the controlling statute and rules. To establish entitlement to disability allowance, ORS 238.320(3)[1] requires that an applicant must be "mentally or physically incapacitated for an extended duration,[[2]] as determined by medical examination, and thereby unable to perform any work for which qualified * * *." Under OAR XXX-XXX-XXXX(1), "[a]ny work for which qualified" is defined by PERS as:
"A job, not necessarily the last or usual job, which the applicant for a disability retirement allowance:
"(a) Is physically and psychologically capable of performing; and
"(b) Has, or may obtain with reasonable training the knowledge, skills and abilities, to perform the job."
PERS has specifically implemented the requirements of ORS 238.320 in OAR XXX-XXX-XXXX(1)(a),[3] and, as a separate requirement, provides that, to be eligible for disability allowance, an applicant must be unable to generate any income that is similar in compensation as of the date of eligibility.[4] OAR *8 XXX-XXX-XXXX(1)(b). The applicant bears the burden of proof, and an order may deny entitlement to disability allowance on the basis that the applicant failed to present sufficient proof of disability and inability to work. OAR XXX-XXX-XXXX(1), (2)(a).
Specific "Criteria for Granting and Denying Disability Retirement Allowances" are set forth in OAR XXX-XXX-XXXX, which provides, in relevant part:
"(1) Medical documentation is required by PERS. Each disability retirement applicant shall supply any treating or consulting physician's examination report or other medical information requested by PERS. PERS may base its determination on either a treating or consulting physician's medical examination report or have the applicant examined by one or more physicians selected by PERS, or both.
"(2) All claims of a disability must be supported by at least one physician's report, resulting from a physical examination, documenting how the injury or disease incapacitates the member.
"(3) In addition, a disability retirement applicant shall be required to furnish the following:
"* * * * *
"(c) For claims of neurological or neurosurgical injury or disease, at least one report of treating or consulting neurologist or neurosurgeon;
"* * * * *
"(4) To demonstrate that he or she is unable to perform any work for which qualified, as defined in OAR XXX-XXX-XXXX(1), the applicant shall document how the injury or disease incapacitates the applicant. The standard is subjective (that is, whether the applicant is actually incapacitated) not objective (that is, whether a `normal' member would have been incapacitated by the same events).
"(a) In determining what work for which a member is qualified, the following factors shall be considered:
"(A) Previous employment experience;
"(B) Formal education;
"(C) Formal training;
"(D) Transferable skills;
"(E) Age; and
"(F) Physical or mental impairment.
"* * * * *
"(c) The inability of the applicant to perform the duties of his or her last job, in itself does not satisfy the criterion."
(Emphasis added.)
After setting forth those rules, PERB concluded that claimant's "medical records strongly support the conclusion that he is physically incapable of returning to work as a parole/probation officer." PERB recognized, however, that claimant's "inability to perform the duties of his last job, in itself, does not satisfy the criterion." Based on the statement by neurologist Bruce Bell that claimant could perform some sedentary work, and on neurologist Lynne Bell's opinion that claimant could perform a desk job, PERB ultimately reasoned and concluded:
"[Claimant] did not present at least one report from a treating neurologist to support his claim that his injury or disease incapacitates him to such an extent that he is incapable of performing any work for which qualified, as required by ORS 238.320.
"For these reasons, [claimant] is not entitled to a disability retirement allowance."
(Emphasis in original.)
Claimant argues on judicial review that PERB erroneously relied on "vague unexplained statements" by the two neurologists to conclude that he did not carry his burden of proof. In particular, claimant argues that he presented sufficient evidence under the applicable PERS rulesincluding medical opinions, his own vocational and educational history, and lay testimony by his wife and former coworkersto establish that he was unable to perform "any work for which qualified." Thus, claimant's argument, as we understand it, is that PERB erred by relying only on the neurologists' opinions to *9 conclude that he was not eligible for a disability allowance. Further, by not considering what types of sedentary or desk jobs claimant might be able to do, claimant argues, PERB, in effect, changed the applicable inquiry, thus requiring claimant to "eliminate the universe of `some sort of sedentary work' or `desk jobs' in order to carry his burden of proof."
In response, PERB argues that claimant's burden of proof clearly required him to establish that he is incapable of performing any work for which he is otherwise qualified and that, because neither Bruce Bell nor Lynne Bell concluded that he was incapable of doing any work, claimant did not meet that burden.
We agree with claimant that PERB erred by relying on only the neurologists to deny claimant's disability allowance. ORS 238.320(3) requires that an applicant be "mentally or physically incapacitated for an extended duration, as determined by medical examination, and thereby unable to perform any work for which qualified * * *." The types of evidence that an applicant must produce to meet the requirements of ORS 238.320(3) are addressed in OAR XXX-XXX-XXXX. An applicant must furnish at least one physician's report documenting how the injury incapacitates the applicant, OAR XXX-XXX-XXXX(2), and at least one report from a specialistin this case, a neurologist. OAR XXX-XXX-XXXX(3).[5] Here, the report from claimant's internist, Fric, that claimant was incapacitated because he was "100% disabled," fulfilled the criterion under OAR XXX-XXX-XXXX(2). Further, claimant provided the board with two neurologists' statements documenting how his disease incapacitated him. Those statements were sufficient to fulfill his requirement under OAR XXX-XXX-XXXX(3).
However, neither OAR XXX-XXX-XXXX(2) nor any other section of OAR XXX-XXX-XXXX requires that medical documentation, alone, must show that an applicant cannot do "any work for which qualified," (defined as a job, not necessarily the last or usual job, that the applicant is physically and psychologically capable of doing and that the applicant has, or may obtain with reasonable training, the knowledge, skills, and abilities to do). OAR XXX-XXX-XXXX(1). Rather, OAR XXX-XXX-XXXX(4)(a) provides a list of factors that "shall be considered" by PERB in determining what work for which a member is qualified; "physical or mental impairment" is but one of those factors. Thus, if medical evidence indicates that the applicant is impaired but nonetheless capable of performing some general category of work, OAR XXX-XXX-XXXX(4)(a) requires PERB to determine whether, in light of the applicant's employment experience, education, training, transferable skills, and age, the applicant is qualified to perform any such work.
PERB is required to demonstrate in its opinions "the reasoning that leads [PERB] from the facts that it has found to the conclusions that it draws from those facts." Drew v. PSRB, 322 Or. 491, 500, 909 P.2d 1211 (1996) (explaining the substantial reason test) (emphasis in original). Here, although PERB made findings relating to each of the factors listed in OAR XXX-XXX-XXXX(4)(a), there is no indication in its reasoning that it considered whether, based on those findings relating to claimant's employment experience, education, training, transferable skills, and age, claimant was able to do a sedentary or desk job. Citing only the neurologists' statements that claimant might be able to do sedentary or desk work was insufficient reason to support PERB's conclusion that claimant is ineligible for a disability allowance.
In other words, we agree with claimant that to meet his burden he was not required to "eliminate the universe" of desk jobs. Nor was he necessarily required, as PERB contends, to provide evidence that the medical opinions were incorrect. Rather, he was required to carry his burden, through proffering sufficient evidence under all the criteria in OAR XXX-XXX-XXXX, to show that he was unable to do any work for which he was qualified. We cannot tell from PERB's order *10 if it considered the factors listed in OAR XXX-XXX-XXXX(4)(a).[6] Therefore, PERB's order lacks substantial reason justifying its denial of disability allowance.
Reversed and remanded.
NOTES
[1] ORS 238.320 addresses when an employee may receive disability allowances. ORS 238.320(3) applies specifically to employees who have been members of the PERS system for 10 years or more and who are unable to work "from cause other than injury or disease sustained while in actual performance of duty or intentionally self-inflicted * * *." In this case, there is no question that claimant worked for the county for over 10 years, and his disability did not arise from performance of a work duty or self-inflicted injury.
[2] An "extended duration" means at least 90 days. OAR XXX-XXX-XXXX(6).
[3] OAR XXX-XXX-XXXX(1)(a) requires that "[a] member be disabled to such an extent that the member is unable to perform any work for which qualified as defined in OAR XXX-XXX-XXXX(1)[.]"
[4] "Similar in compensation" means salary or income, excluding overtime, equaling at least 80% of the salary earned in the last full month of employment, including employer payments under ORS 238.205 (addressing payment of employee contributions by employers). OAR XXX-XXX-XXXX(20).
[5] OAR XXX-XXX-XXXX(3) is applicable only in certain situations where a particular specialist's opinion is necessary to fully evaluate the applicant's medical condition. In this case, in which claimant has filed a claim of a neurological injury, at least one report of a treating or consulting neurologist or neurosurgeon is necessary. OAR XXX-XXX-XXXX(3)(c).
[6] We note that, under OAR XXX-XXX-XXXX(1)(b), the board is also required to consider whether any such work for which the applicant is qualified would allow the applicant to generate income that is similar to his income as of the date of disability.