Argued and submitted January 14, affirmed June 5, 2013

Shadman AFZAL,
*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

Public Employees Retirement Board
071072; A149863

303 P3d 1008

Nelson R. Hall argued the cause for petitioner. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Mary H. Williams, Deputy Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Judge, and Egan, Judge.

HADLOCK, J.

**HADLOCK, J.**

In *Afzal v. PERB*, 239 Or App 284, 293, 246 P3d 5 (2010) (*Afzal I*), we reversed and remanded a final order in which the Public Employees Retirement Board (PERB) had denied claimant's request for a disability retirement allowance on the ground that he had failed to show that he was unable to perform any work for which he was qualified. *See* ORS 238.320(3) (conditioning eligibility for a disability retirement allowance on the claimant being "unable to perform any work for which qualified"); OAR 459-015-0040(1) ("The burden of proof for entitlement to a disability retirement allowance is upon the applicant."). On remand, PERB reached the same conclusion as it had in its initial order, again denying claimant's request for benefits. Claimant seeks judicial review of PERB's order on remand, asserting that the order is flawed for two reasons. First, claimant contends that the order on remand relied on the same reasoning that we rejected in *Afzal I*. Second, claimant argues that the order on remand is not supported by substantial evidence. We disagree with claimant on both points and, for the reasons set forth below, affirm.

We take the following facts from PERB's findings and the record, in part as we summarized them in *Afzal I*. Claimant worked for Multnomah County for many years, most recently as a community justice manager. In that position, claimant planned and approved arrests, detainments, and searches; he also actively participated in arrests. In addition, claimant held meetings with department members, management, staff, and outside partners. In a job description he submitted to the Public Employees Retirement System (PERS), claimant described his duties as follows:

> "Manage, direct, evaluate and coordinate and prioritize a multifunction work unit. Manage delivery of community justice services. *** Manage and direct lead workers in operation of the work unit and flow of work. Manage the lead worker to help in staff training and assignments. Collaborate and form partnerships with other entities and represent the department in public meetings and multi agency taskforces. Respond to community groups and formulate plans to resolve issues. This position is responsible

for unit and office budgets. Head and organize safety committees. This position also requires program development and implementation of programs. * * *"

As claimant testified, before working for the county, he had worked in fast food restaurant management and also for a security department. Claimant held a bachelor's degree in administrative justice and psychology, and he also had completed some post-graduate coursework.

While employed as a community justice manager, claimant developed a physical impairment, primarily in his left leg, and he subsequently resigned from his position with the county. We summarized those events in *Afzal I*:

"From October 2002 through January 2008, claimant saw an internist, Dr. Frank Fric, to address symptoms that were causing him to have problems at work, including dizziness, heaviness in the head, unstable gait, and weakness. By early 2006, claimant's symptoms had progressed to the point that they began to cause more noticeable complications at work. Claimant's colleagues expressed concern about changes in his decision-making ability and attention to detail. He often seemed confused, fatigued, and inattentive; on several occasions he nodded off during meetings.

"Also in 2006, claimant developed physical complications, including walking with a limp and dragging his left leg. * * * He began seeing neurologist Dr. Bruce Bell on May 22, 2006. After that initial visit, Bell opined that claimant could have 'some sort of unusual dystonia or possible early Parkinson disease to explain the gait problems. He may have a mild seizure disorder.' Claimant's internist, Fric, also noted in a subsequent visit that claimant's condition had worsened, developing into 'basically uncontrollable non-symmetric movements of the entire body, arms, legs. Observing him sitting in [a] chair, he is moving up and down on the chair, almost sliding off.'

"After resigning from his position as a community justice manager on December 8, 2006, he and his wife, from February 2007 through December 2007, operated a business selling watches and clocks from a cart inside a shopping mall. Claimant worked at the cart for a short time but had to stop because he was having problems focusing and

staying alert. He was also having difficulty standing and otherwise being able to physically assist customers."

239 Or App at 287 (brackets in *Afzal I*).

Claimant applied to PERS for disability retirement benefits in January 2007, listing his condition as "Parkinson's—dopamine sensitive dystonia." At the request of PERS, claimant's internist, Fric, provided a medical report stating that he was uncertain whether claimant would be able to perform any work for which he was qualified. Neurologist Bruce Bell also provided PERS with medical information, identifying claimant's condition as "Parkinson's." In March 2007, Bruce Bell opined that claimant's physical impairments left him unable to return to his former job because he could not "respond rapidly from a physical point of view to anything that may come up."[1] Bruce Bell also reported, however, that, if claimant "had some sort of sedentary work which did not require stress, he might be able to do that."

Later in 2007, neurologist Lynne Bell performed an independent medical examination of claimant. She, too, reported that claimant's primary difficulty related to his left leg and ambulation, and she opined that claimant had a "functional gait disorder." Lynne Bell also noted that the "shaking of the hands" that claimant initially exhibited "disappeared with distracting maneuvers[,]" and that she suspected "a psychogenic component" to claimant's condition. Lynne Bell concluded that, based on claimant's "current clinical presentation, he would be capable of performing a desk job."

In September 2007, PERS denied claimant's application for disability retirement benefits. Claimant sought a hearing, and PERS referred his request to the Office of Administrative Hearings, which assigned an administrative law judge (ALJ) to hear his claim. Before the hearing took place, another neurologist, William Herzberg, reported that claimant suffered from two conditions—seizure disorder

---

[1] Bruce Bell reiterated that opinion in late 2007, reporting that claimant was "100% disabled and * * * unable to perform the work of his previous job due to the difficulty of using his left foot." Bruce Bell concluded that it was "unlikely" that claimant "will be able to return to" the job with the county.

and dystonia (a neurological movement disorder)—and would not be able to return to his position with Multnomah County.

After a June 2008 hearing, the ALJ issued a proposed order recommending that claimant's request for disability benefits be denied. PERB then issued a final order in which it adopted the ALJ's findings of fact and, ultimately, agreed with the ALJ that claimant was not entitled to a disability retirement allowance.

That first final order focused, at least nominally, on whether claimant had met his burden of proving that he no longer was able to perform any work for which he was qualified. A statute and several administrative rules govern that analysis. Under ORS 238.320(1), to establish eligibility for a disability retirement allowance, a claimant must be "mentally or physically incapacitated for an extended duration * * * and thereby unable to perform any work for which qualified[.]" OAR 459-015-0001(1) defines "any work for which qualified" as follows:

"A job, not necessarily the last or usual job, which the applicant for a disability retirement allowance:

"(a)   Is physically and psychologically capable of performing; and

"(b)   Has, or may obtain with reasonable training the knowledge, skills and abilities, to perform the job."

To determine whether a claimant is unable to perform any work for which qualified, PERB must consider six factors:

"(A)   Previous employment experience;

"(B)   Formal education;

"(C)   Formal training;

"(D)   Transferable skills;

"(E)   Age; and

"(F)   Physical or mental impairment."

OAR 459-015-0010(4)(a).

PERB's assessment of those factors is aided by information provided by the claimant, who must submit at least one medical report "resulting from a physical examination, documenting how the injury or disease incapacitates" him or her. OAR 459-015-0010(2). In addition, where the claim is based on a neurological condition, the claimant must submit at least one report from a "treating or consulting neurologist or neurosurgeon." OAR 459-015-0010(3)(c)[.] The claimant bears the burden of proving entitlement to a disability retirement allowance. OAR 459-015-0040(1). PERB "is not required to prove whether the applicant is or is not eligible for a disability retirement allowance." OAR 459-015-0005(2).

In its initial order, PERB denied claimant's request for a disability retirement allowance based on its determination that claimant had failed to "present at least one report from a treating neurologist to support his claim that his injury or disease incapacitates him to such an extent that he is incapable of performing *any* work for which qualified, as required by ORS 238.320." (Emphasis in original.) As we explained in *Afzal I*, however, ORS 238.320(3) does not require a claimant to submit a physician's report opining that the claimant is incapable of performing any work for which he or she is qualified; rather, the statute simply specifies that the claimant must be incapacitated to that extent in order to qualify for a retirement disability allowance. 239 Or App at 292; *see* ORS 238.320(3). And, to the extent that the administrative rules require claimants to submit medical reports that include specific information about their disabilities, claimant met that obligation here. *See Afzal I*, 239 Or App at 292 (citing OAR 459-015-0010(2), (3)).

Our decision to remand PERB's order was based on PERB apparently having denied benefits based *solely* on the absence of a statement by a neurologist that claimant was incapable of performing any work for which he was qualified—a statement that, as we explained, is required neither by ORS 238.320(3) nor by the related administrative rules. *Id*. at 292-93. Instead, we held, PERB needed to consider all pertinent factors, as specified in OAR 459-015-0010(4)(a),

in assessing whether claimant had carried "his burden
* * * to show that he was unable to do *any* work for which he
was qualified." *Id.* at 293 (emphasis in original). Because we
could not tell from PERB's order whether it had considered
all of those factors, the order "lack[ed] substantial reason
justifying its denial of disability allowance." *Id.* Accordingly,
we reversed the order and remanded it to PERB for further
proceedings.

On remand, PERB again denied claimant's applica-
tion for a retirement disability allowance. However, in accor-
dance with our holding in *Afzal I*, PERB's order on remand
included new analysis related to the OAR 459-015-0010(4)(a)
factors (employment experience, education, training, trans-
ferable skills, age, and physical or mental impairment):

> "At 44 years old, [claimant] is relatively young. He holds a
> Bachelor of Science in Administrative Justice and in Psy-
> chology and has completed some post-graduate coursework.
> He has dystonia of the lower extremities, particularly in
> his left leg which impairs his ability to ambulate in a rapid
> manner. But this physical impairment does not preclude
> him from other, more sedentary, tasks and duties. His prior
> work experience as a manager brings with it extensive job
> skills, including the ability to manage, direct, evaluate and
> coordinate and prioritize a multifunction work unit.

> "[Claimant] has experience heading committees, devel-
> oping and implementing programs, and overseeing program
> budgets. These skills are not unique to work as a parole
> officer or to managing parole officers. These skills are trans-
> ferable to other management positions, some of which may
> be 'desk jobs' [claimant] could perform. These management
> positions could include, but are not limited to, working for
> a corporation or state agency that could offer job-specific
> training to [claimant]. [Claimant] did not present a voca-
> tional evaluation, expert medical opinions, or any other evi-
> dence to support a conclusion that he is not qualified for
> this type of management-related work * * *. Moreover, there
> is no medical evidence to support a conclusion that [claim-
> ant] suffers from a cognitive impairment that would pre-
> clude him from performing this type of managerial work.

"[Claimant] failed to present expert medical evidence to support a conclusion that his physical impairment prevents him from performing sedentary work. Considering his age, his formal education, his formal training, his transferable skills, and his physical impairment, [claimant] has not demonstrated that h[e] is unable to perform any work for which otherwise qualified. For these reasons, [claimant] is not entitled to a disability retirement allowance."

On judicial review, claimant asserts that PERB's order on remand "contains the same errors and leap of logic based on a lack of foundation this Court addressed" in *Afzal I*. More specifically, we understand claimant to be arguing (1) that PERB again erred by relying on the neurologists' reports as a basis for denying his claim, and (2) that the order on remand lacks substantial evidence.[2] PERB responds that its order was not contrary to our prior opinion. PERB also asserts that substantial evidence in the record supports its conclusion that claimant had failed to establish that he was precluded from all work for which he was qualified. In making that argument, PERB observes that claimant had the burden of proving his qualification for a disability retirement allowance. We address claimant's arguments in turn, reviewing PERB's order for substantial evidence and reason, as well as for errors of law. *SAIF v. Ramos*, 252 Or App 361, 363, 287 P3d 1220 (2012).

Claimant first argues that PERB's order on reconsideration repeats the reasoning that we rejected in *Afzal I*. According to claimant, PERB "relied upon the same two medical statements [from neurologists Bruce Bell and Herzberg]

---

[2] In *Afzal I*, we expressed our agreement with claimant's argument that he "was not required to 'eliminate the universe' of desk jobs." 239 Or App at 293. Citing that statement, claimant also argues that PERB erred on remand by "once again requiring [him] to carry a burden disproving a universe of jobs[.]" Claimant reads too much into a single sentence from *Afzal I*. Our statement that claimant was not required to "'eliminate the universe' of desk jobs" must be read together with our explanation that claimant did have the burden of "proffering sufficient evidence under *all* the criteria in OAR 459-015-0010, to show that he was unable to do *any* work for which he was qualified." *Id.* (emphases in original). In that context, our observation that claimant was not required to "eliminate the universe" of possible desk jobs meant only that claimant did not have the burden of proving that negative *in the abstract*. That is, although claimant was not required to establish that *no* desk job exists (anywhere, of any type) that he could perform, he was required to prove that he generally could not perform jobs within the *specific* universe of desk jobs that he is qualified to perform, taking into account the OAR 459-015-0010(4)(a) factors.

to again * * * conclude [that he] did not prove his inability to work." As noted, in its initial order, PERB determined that claimant had not presented at least one report from a neurologist that supported his claim that he could not perform any work for which he was qualified. Thus, PERB at least implicitly found that the reports from Bruce Bell and Herzberg were insufficient to establish that claimant could not perform sedentary work. As explained above, our remand in *Afzal I* was based on PERB's error in relying *solely* on its conclusion about the lack of a supporting neurology report as a basis for denying claimant's application for benefits. 239 Or App at 291-93. In the order on remand, PERB reiterated its observations about the reports from Bruce Bell and Herzberg. More significantly—at least from claimant's perspective—PERB also repeated verbatim the sentence that prompted our remand in *Afzal I*: "[Claimant] did not present at least one report from a treating neurologist to support his claim that his injury or disease incapacitates him to such an extent that he is incapable of performing *any* work for which qualified, as required by ORS 238.320." (Emphasis in original.)

Notwithstanding PERB's repetition of the offending sentence, we conclude that the order on remand is supported by substantial reason. The order on remand is not actually based—as the initial order appeared to be—on the absence of a neurologist's report stating that claimant is unable to perform any work for which he is qualified. Rather, the order on remand reflects PERB's consideration of the six factors in OAR 459-015-0010(4)(a): employment experience, education, training, transferable skills, age, and physical or mental impairment. On remand, PERB explained that, in deciding whether claimant could perform a desk job, it had considered

- claimant's previous management experience;

- claimant's bachelor's degree in administrative justice and psychology and his completion of some postgraduate coursework;

- claimant's skills in, among other things, managing people, heading committees, developing and implementing programs, and overseeing budgets, which

were "not unique to work as a parole officer or to managing parole officers" and therefore were transferable;

- claimant's "relatively young" age (44 years old); and
- claimant's limitations, as well as evidence that those limitations did not "preclude him from other, more sedentary, tasks and duties."

Thus, PERB considered the factors that OAR 459-015-0010(4)(a) requires it to take into account. PERB's repetition of the sentence about the neurologists' reports appears, in context, to be nothing more than an unfortunate artifact from the original order. Because PERB's new rationale for denying claimant's claim is based on all of the OAR 459-015-0010(4)(a) factors, and not solely on the neurologists' reports, we find that artifact to have little significance. Phrased in the terms that claimant uses in his brief, PERB's order on remand does not impermissibly rely on the reasoning that we rejected in *Afzal I.*

That brings us to claimant's second argument, in which he contends that the order on remand is not based on substantial evidence. Claimant's argument starts from a flawed premise—that the record must include "substantial evidence of an ability to work." Based on that premise, he complains in his opening brief that the record does not include, for example, a vocational evaluation establishing that he can perform certain types of desk jobs. But, as explained above, claimant bore the burden of showing that he could not perform any work for which he was qualified; PERB did not bear the burden of showing the converse. OAR 459-015-0005(2); OAR 459-015-0040(1). Thus, the record need not include substantial evidence showing that claimant *can* work; all it need contain is substantial evidence supporting PERB's determination that claimant did not meet his burden of proving that he *cannot* work. For that reason, the absence of a vocational evaluation undercuts claimant's argument, rather than supporting it.[3]

[3] Although claimant acknowledges in his reply brief that PERB "may not be required to obtain evidence from a vocational expert," he still insists that the order on remand is not supported by substantial evidence because the record does not include specific evidence of possible "alternative employment." As we have

And the record on remand does include substantial evidence supporting PERB's determination that claimant did not establish that his impairment prevents him from performing sedentary work for which he would be qualified. The record, viewed as a whole, supports PERB's findings that claimant is relatively young, that he could benefit from job-specific training, that his prior experience managing people is transferable to other jobs requiring that skill, and that his management background generally qualifies him for other management positions. The record also includes substantial evidence, like the report from Lynne Bell, that supports PERB's finding that claimant does not suffer from any cognitive impairment that would prevent him from performing management work. Those findings rationally lead to PERB's ultimate determination that claimant failed to show that he was unable to perform any work for which he was qualified and, therefore, was not entitled to a disability retirement allowance. Thus, the order on remand is supported by substantial evidence and reason.

Affirmed.

---

explained, it is claimant's burden to establish that such alternative employment does not exist, not PERB's burden to prove that it does.