IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TIM GRAHAM,<br><br>                        Respondent,<br><br>          v.<br><br>PARK SANG HO and PARK JUNG<br>MYUNG, and their marital community,<br><br>                        Appellants. | No. 79523-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — On May 13, 2016, Tim Graham entered into a real estate transaction (Transaction) to lease, with an option to purchase, a property in Sedro-Wooley (Property) from Park Sang Ho for $1,024,000. Under the agreements comprising the Transaction, Graham would make a $60,000 option payment, lease the Property for two years, and take full ownership by July 1, 2018, should he exercise the option and pay the purchase price. The parties agreed that Graham's obligations were contingent on his assumption of Park's $450,000 mortgage on the Property with Pacific City Bank (Bank). However, after Graham took possession of the Property under the lease, he learned that the Bank would not allow the assumption. After unsuccessfully seeking alternative modes of financing the purchase, Graham informed Park that he sought rescission of the agreements and refund of his $60,000 option payment. Park denied his request.

Graham sued Park seeking rescission and a refund. The parties brought

cross-motions for summary judgment. The trial court denied Park's motion and granted Graham's. The trial court concluded that Graham's claim justified rescission and ordered refund of the $60,000 option payment. It reasoned that the Bank's unwillingness to allow assumption of the mortgage constituted a failure of a material term of agreements comprising the Transaction. The trial court also awarded Graham attorney fees and costs. Park appeals.

Because the Bank's unwillingness to allow an assumption of the mortgage rendered a basic understanding[1] of the Transaction impossible, we affirm. We also affirm the trial court's award of attorney fees and costs, and award Graham fees and costs on appeal.

## I. BACKGROUND

On May 13, 2016, Graham and Park entered into several agreements regarding the purchase of the Property: (1) a lease agreement; (2) an option agreement; and (3) a purchase and sale agreement (PSA), including a "Financing Addendum" and a "First Addendum." The option agreement was part of the lease, and the PSA was attached to the option agreement as Exhibit B. On August 7, 2016, the parties entered into a "Second Addendum" to the lease agreement. Graham initially planned to redevelop the Property after purchase.

### A. Lease Agreement

Under the lease agreement, Graham agreed to rent the Property until the

---

[1] To avoid confusion, we use the term "understanding" here in lieu of "assumption," since, coincidentally, this case involves the assumption of a loan. Where so used, the term refers to the assumption of the parties as expressed in the Transaction.

2

July 1, 2018 closing date.  Graham agreed to make 24 monthly payments of $1,000 to Park.  The parties additionally agreed that the rent payments under the lease would go towards the purchase price.

### B. Option Agreement

As a part of the lease agreement, the parties also executed an option agreement under which Graham agreed to pay $60,000 towards the purchase price of the Property.  The parties agreed that a $10,000 earnest money payment from the PSA—addressed below—would become part of the $60,000 option payment.  The option agreement provided that the $60,000 payment would be retained by Park in the event that the sale failed to close prior to the closing date.  The option agreement stated that if the buyer exercises the option, the parties shall proceed with the transaction according to the terms and conditions set forth in the PSA.  Finally, the option agreement stated that it is "accompanied by a Lease and Purchase and Sale Agreement between the parties and dated May 13, 2016."

### C. Purchase and Sale Agreement

Under the PSA, which was Exhibit B to the option agreement, Graham agreed to a purchase price of $1,024,000 for the Property.  The parties set closing for July 1, 2018.  Graham agreed to extend $10,000 in earnest money as a part of the PSA.  The PSA stated that "[i]n the event [Park] fails, without legal excuse, to complete the sale of the Property, then . . . [Graham] may . . . terminate this Agreement and recover all earnest money or fees paid by [Graham] whether or not the same are identified as refundable or applicable to

3

the purchase price." This agreement also contained a feasibility contingency. The feasibility contingency gave Graham 45 days—the "Feasibility Period"—to inspect all aspects of the Property and its feasibility for his desired purpose. The contingency provided that unless Graham gave written notice that the feasibility contingency was satisfied within 45 days of the mutual acceptance of their agreements—in this case, 45 days from May 13, 2016—the agreement would terminate and Graham would receive a refund of his earnest money.

D. Financing Addendum

The parties also entered into a Financing Addendum comprising a part of the PSA. Park had taken out a mortgage with the Bank on April 22, 2016, not long before the parties executed the May 13, 2016 agreements. The mortgage contained a due-on-sale clause. Under the Financing Addendum, Graham's obligations under the PSA were contingent on his assumption of the mortgage, with Park remaining liable on the loan. The Financing Addendum stated:

a. **Approval of Documents.** [Graham's] obligations under the Agreement are contingent on [Graham's] assumption of a note and mortgage or deed of trust, or a real estate contract. [Park] shall deliver to [Graham] within five (5) days after mutual acceptance of the Agreement a copy of all documents relating to the obligations that [Graham] will assume, including the note, deed of trust, mortgage or real estate contract . . . [Graham] shall be deemed to have approved the Underlying Loan Documents unless [Graham] gives notice of disapproval during the Feasibility Period . . .

b. **Consent to Assumption.** [Graham] shall submit a complete application for assumption of the Underlying Loan Documents together with any required application fee no later than five (5) days after the end of the Feasibility period. Upon [Graham's] request, [Park] shall assist [Graham] by requesting the lender's consent to the assumption on [Graham's] behalf . . . Unless [Graham] has obtained consent [from the lender] or waived this

4

condition within [30 days] after the end of the Feasibility Period and provided [Graham] has timely complied with [his] obligations under this Addendum, this Agreement shall terminate and, [Graham] shall receive a refund of the earnest money.

The Financing Addendum also stated that the assumption constituted a portion of the value of the purchase price of the Property. Graham and his broker, Richard Nord, later claimed that the assumption would be necessary for the financing for the redevelopment of the Property. Accordingly, Graham claimed that he would not have entered into the Transaction without the assumption provision.

E. First Addendum

The First Addendum to the PSA provided for Graham to make the $60,000 option payment by the end of the feasibility period, and only upon the execution of the lease and acceptance of the PSA.

F. Second Addendum

After taking possession, Graham claimed the Property had numerous physical defects. As a part of the Second Addendum—this addendum being attached to the lease agreement—the parties agreed that the $60,000 option payment would be disbursed to Park, with some portion of that payment going directly towards repairs to the Property. While the copies of the Second Addendum in the record are largely illegible, the Chicago Title ledger shows that Park received $46,365.34 from Chicago Title.[2] It is unclear exactly when the parties came to an agreement on the Second Addendum, and when the option

---

[2] It appears that some portion of the $60,000 payment went back to Graham for "re-imbursement [sic] for July rents collected by the seller" and for "repair of leaking roof over . . . restaurant." (Ellipsis replaces illegible text.) Additionally, some portion of the $60,000 went to water heater repairs, and another portion went to Mike Welling, Park's broker, and Nord.

5

payment was disbursed.[3]

## G. Failure of the Assumption

Graham claimed still not to have received the Underlying Loan Documents identified by the Financing Addendum by December 2016, which had been due around a half year before.[4] Welling put Graham in contact with Park's son, Park Juhong; Park Juhong said he would assist Graham in obtaining the Underlying Loan Documents from the Bank. On January 6, 2017, the Bank told Graham in an e-mail that they would not release the loan documents to him without Park's written permission. On January 10, Graham e-mailed Park Juhong twice, first requesting "the copy of the mortgage documents and approval letter from [Park]," and next saying that the "mortgage company will deal with us only when I have letter signed by your mom and dad." Park Juhong encouraged Graham to call the Bank again. Graham claims that he called again, and that the Bank told him they would not assign or subordinate the loan. On January 14, Park Juhong emailed Graham, stating: "I was informed that you have talked with the bank person, Mr. Lee. I understood he gave you [a] sufficient answer. I and my father need to consider and respect the Bank's opinion. If there's anything to help you,

---

[3] In his opening brief, Park says Graham signed the Second Addendum on August 7, 2016. In Graham's response, he says the parties came to mutual agreement and executed the addendum on December 7, 2016. In Park's reply, he says the option payment was disbursed on December 7, 2016. The Second Addendum is largely illegible, but it appears Graham signed it on August 7, 2016, and that Park signed it on December 7, 2016. However, Chicago Title's records show the company released the $60,000 payment held in escrow during July and August of 2016.

[4] It is unclear in the record exactly when Graham received the Underlying Loan Documents. In Graham's Response to Park's Motion for Summary Judgment, he states that he received them in February 2017.

please let us know." Graham emailed Welling, stating that the Bank representative told him they were not willing to allow anyone to assume the mortgage on the Property and that, "according to our contract, the mortgage is assumable."[5]

Graham claims he then made attempts to obtain alternative modes of financing to no avail. Graham also sent two letters to Park in 2017 about securing alternative modes of financing, to which he claims he received no response. On November 27, 2017, Welling sent another email to Park Juhong, in which he said that "[t]his entire contract was dependent on [Graham] assuming the $450,000 loan of your fathers [sic]. They were not able to do that, because the loan is not assumable." On December 4, 2017, Nord sent an email to Welling, asking if Park would be willing to influence the Bank to allow an assumption; Welling replied that Park would not. Graham, via counsel, then sent a letter to the Bank, requesting they provide a statement in writing that they would not allow an assumption of the mortgage, and a statement of whether they intended to enforce the mortgage's due-on-sale clause. The record does not show that Graham received a reply. A declaration from a Bank employee states that "[a]ny and all successions or assignment of the loan under the Loan Agreement would have required [the] Bank's prior written consent." The record does not contain any letter of consent from the Bank. A declaration from a Bank employee also states that the bank has no record of loan applications submitted

---

[5] Welling stated in a deposition that he believed the assumption was part of the agreement between Graham and Park.

by Graham.

On January 16, 2018, Graham sent Park a letter of intent to rescind the PSA and lease agreement on the basis that he could not assume the mortgage. The letter stated that if Graham did not receive a refund of his $60,000 option payment by January 24, 2018, he would sue for rescission. In his reply, Park stated that while he was "inclined to consider rescinding the [PSA] and Lease," he rejected the request to refund the option payment.

H. Lawsuit

On March 13, 2018, Graham filed an action against Park seeking rescission of the parties' contracts, disgorgement of the $60,000 option payment, prejudgment interest, and attorney fees.[6] On May 14, 2018, Park filed an answer. On April 19, 2018, Graham moved for summary judgment. The trial court denied his motion on August 10, 2018.

On November 8, 2018, Park moved for summary judgment. Graham filed a cross-motion for summary judgment on November 9, 2018.[7] The trial court granted Graham's motion and denied Park's, deciding that, because the Bank

---

[6] While Graham's suit was against the Parks and their marital community, Park Sang Ho appears to have been the primary individual involved in this transaction. Accordingly, when referring to Park, we mean only Park Sang Ho. We intend no disrespect.

[7] Graham claimed in his second motion for summary judgment that his first was denied because of "a factual dispute as to whether the request to assume the mortgage had been denied, and whether (and when) [Park] knew about it." Nothing else in the record appears to provide additional clarity about the ruling on his first motion. In support of his second motion for summary judgment, Graham submitted excerpts of the transcript from the deposition of Welling, wherein Welling stated that he asked Park, on Graham's behalf, if he would be willing to try to influence the Bank to allow an assumption; Welling further claimed that Park declined to do so. Graham also submitted emails sent by Welling, wherein Welling stated the "loan is not assumable" and that Park was not willing to influence the Bank on Graham's behalf.

was unwilling to allow assumption of the mortgage, a material term of the agreement failed.[8] The trial court determined that this conclusion justified rescission of the Transaction and refund of Graham's $60,000 payment. Graham then moved for entry of final judgment, which the trial court granted on January 9, 2019. The trial court also granted Graham's request for attorney fees and costs under the PSA.

Park appeals the trial court's denial of his summary judgment motion and the grant of Graham's summary judgment motion.

## II. ANALYSIS

We review de novo summary judgment rulings. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Strauss, 194 Wn.2d at 300 (internal ellipsis, quotation marks and citation omitted); CR 56(c). We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011). Additionally, "[o]n summary judgment review, we may affirm the trial court's decision on any basis within the record." Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d

---

[8] The trial court did not specify which of the parties' agreements had failed, and treated the agreements as one integrated contract. Park does not argue the trial court erred in this determination of an integrated document.

9

822 (2011).

"The purpose of contract interpretation is to determine the parties' intent." Roats v. Blakely Island Maint. Com'n, Inc., 169 Wn. App. 263, 274, 279 P.3d 943 (2012). Washington courts focus on an agreement's objective manifestations to ascertain the parties' intent. Martin v. Smith, 192 Wn. App. 527, 532, 368 P.3d 227 (2016). Martin explains this approach further:

> We impute an intention corresponding to the reasonable meaning of the words used. The parties' subjective intent is irrelevant if we can ascertain their intent from the words in the agreement.
>
> We give words their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. We interpret only what was written in the agreement, not what the parties intended to write.

192 Wn. App. at 532 (internal quotation marks and citations omitted).

A. Park's Summary Judgment Motion

Park argues that the trial court improperly denied his summary judgment motion wherein he requested the court dismiss the claims against him with prejudice. We disagree.

1. Waiver by Expiry of the Feasibility Period and Option Payment

In his summary judgment motion, Park argued that, since the feasibility period expired, Graham could no longer challenge the Underlying Loan Documents and assert breach on the basis that he could not assume the mortgage. Park makes this argument again in his appellate reply brief, but not in his opening brief. We will not consider arguments raised for the first time in a reply brief, since the respondent has had no meaningful opportunity to respond. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549

(1992). Park also makes a different characterization of this argument elsewhere in his brief, saying that, because the option payment includes nonrefundable earnest money, the trial court erred in ordering refund of the option payment. Under RAP 2.5(a) we may decline to review any claim of error not raised to the trial court, and decline to do so here.[9]

2. Assumption Application

Park argues that Graham breached the Financing Addendum by not applying for a mortgage assumption with the Bank, so the court should dismiss the claims against him with prejudice.

The Financing Addendum required Graham to apply for an assumption within five days of the end of the feasibility period. Graham concedes he did not so apply.

---

[9] In any event, both these arguments lack merit. As to the first, Park apparently did not provide Graham with the Underlying Loan Documents during the feasibility period as required by the Financing Addendum. As such, it was impossible for Graham to identify a defect with them during the time period required by the Financing Addendum. Further, even if he had received the Underlying Loan Documents during this time, nothing therein shows that the lender would not allow an assumption. Only when Graham made contact with the Bank could he have learned that they would not allow assumption of the mortgage. Park's second argument is more difficult to understand. He asserts that the $10,000 earnest money payment became nonrefundable at the end of the feasibility period. Next, he indicates that, since the earnest money payment went towards the $60,000 option payment, the trial court erred in concluding that he should repay the option payment, since it includes the $10,000 nonrefundable earnest money payment. But Park does not identify which portion of any agreement signed by the parties renders the earnest money payment nonrefundable at the end of the feasibility period. Contrary to his assertions, the feasibility contingency does not suggest that the earnest money becomes nonrefundable at the end of the feasibility period, but instead indicates that it would be refunded to Graham unless he gave written notice to Park that the feasibility contingency was satisfied. The PSA states that "[i]n the event [Park] fails, without legal excuse, to complete the sale of the Property, then . . . [Graham] may . . . terminate this Agreement and recover all earnest money or fees paid by [Graham] whether or not the same are identified as refundable or applicable to the purchase price."

However, Graham argues that, since the Bank would not allow him to assume the mortgage, he could not apply for the assumption as otherwise required by the Financing Addendum. Graham claims he first contacted the Bank about allowing an assumption in December 2016, still before he received any of the Underlying Loan Documents from Park.[10] Graham claims the Bank told him they would not allow an assumption. Once Graham learned the Bank would not allow assumption, he made other efforts to contact Park about alternative financing. Park apparently did not respond. Graham also wrote to the Bank requesting them to state in writing whether or not they would allow an assumption. The record does not suggest he received a reply.

The Financing Addendum also required Park to request that the lender consent to the assumption on Graham's behalf. ("Upon [Graham's] request, [Park] shall assist [Graham] by requesting the lender's consent to the assumption on [Graham's] behalf."). An email exchange between Nord and Welling shows that Park was unwilling to do so.

The foregoing facts establish that Graham made significant efforts towards obtaining an assumption of the mortgage, even if he did not apply for an assumption as required by the Financing Addendum. The foregoing facts also establish that Park failed to assist Graham in obtaining an assumption of the mortgage, as the Financing Addendum obliged him to do. The law does not require someone to do a useless act. Moratti v. Farmers Ins. Co. of Wash., 162

---

[10] The Financing Addendum required Park to provide the Underlying Documents to Graham within five days after mutual acceptance of the PSA.

Wn. App. 495, 504–505, 254 P.3d 939 (2011) (citing <u>Willener v. Sweeting</u>, 107 Wn.2d 388, 395, 730 P.2d 45 (1986); <u>see</u> <u>also</u> <u>Kane v. Borthwick</u>, 50 Wn. 8, 12, 96 P. 516 (1908) ("The maxim that the law does not compel one to do vain or useless things applies to the case of tender of performance of an obligation. Hence a tender is not necessary where it appears that, if made, it would have been fruitless."). Here, the record, viewed in the light most favorable to Graham, shows that, even if he had submitted an application for the assumption, the Bank would have denied it. Thus, Graham had no obligation to apply for the assumption.

The trial court properly denied Park's motion for summary judgment.

B. Graham's Summary Judgment Motion

Graham argued in his summary judgment motion that the trial court should disgorge the option payment made pursuant to the Option Agreement; he contended that the parties entered their agreements with the understanding that Graham would assume Park's mortgage, but the Bank would not allow assumption. The trial court granted Graham's motion and ordered refund of the $60,000 option payment. Park argues the trial court did so improperly.

We conclude that a basic understanding of the Transaction became impossible when the Bank refused to consider assumption, and determine that rescission of the Transaction and refund of Graham's $60,000 payment was the appropriate remedy.

1. Impossibility

Park argues that a material issue of fact exists as to whether the Bank

would have allowed an assumption, so the trial court improperly determined a material term of the Transaction failed. Because Graham raised this issue in a summary judgment motion, we construe all facts and inferences in Park's favor. However, we determine that no material issue of fact exists, and conclude that the trial court properly determined that a material term of the Transaction failed, since the Bank's unwillingness to allow the assumption rendered Graham's performance impossible.

The trial court did not identify what grounds justified rescission, except to say that a material term of the parties' agreement failed. However, the assumption of the mortgage constituted a basic understanding of the Transaction, and its nonoccurrence rendered Graham's performance unreasonably difficult.

The doctrine of impossibility and impracticability of performance discharges a party from their contractual obligations when a basic understanding of a contract is destroyed, such destruction makes performance impossible or impractical, and the party seeking relief does not bear the risk of the unexpected occurrence. Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys., 104 Wn.2d 353, 363–64, 705 P.2d 1195 (1985). This doctrine excuses performance upon a showing of extreme or unreasonable difficulty, expense, or injury, but "[t]he mere fact that a contract becomes more difficult or expensive than originally anticipated does not justify setting it aside." Pub. Util. Dist., 104 Wn.2d at 364. The question of impossibility is typically "one of law rather than fact, for the court rather than the jury." Wash. State Hop Producers, Inc.,

Liquidation Tr. v. Goschie Farms, Inc., 51 Wn. App. 484, 488–89, 754 P.2d 139 (1988), aff'd, 112 Wn.2d 694, 773 P.2d 70 (1989) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 261 (1989)).

The plain text of the Financing Addendum indicates that the assumption constituted a basic understanding of the Transaction ("[Graham's] obligations under the Agreement are contingent on [Graham's] assumption of a note and mortgage or deed of trust, or a real estate contract."). The assumption explicitly constituted a portion of the Property's purchase price. Without the assumption, Graham would have to endure the unreasonable difficulty of finding alternative financing and paying the balance of the mortgage to the Bank. Graham's obligations are excused under the doctrine of impossibility.

While the record does not contain a clear, specific statement from the Bank that they would not allow an assumption, the record is replete with other uncontested evidence showing just that. On January 17, 2017, Graham emailed Welling stating that the Bank would not be willing to allow anyone to assume the mortgage. On November 27, 2017, Welling emailed Park Juhong telling him that "[t]his entire contract was dependent on them assuming the $450,000 loan of your fathers [sic]. They were not able to do that, because the loan is not assumable." A declaration from a Bank employee states that "[a]ny and all successions or assignment of the loan under the Loan Agreement would have required [the] Bank's prior written consent." No such written consent appears in the record. Welling stated in his deposition that he asked Park, on Graham's behalf, if he would be willing to try to influence the Bank to allow an assumption;

15

Welling further claimed that Park declined to do so. Park offers no evidence to counter Graham's assertion that the Bank would not allow an assumption. Thus, no genuine issue of material fact exists as to whether the Bank would allow an assumption. Further, without the assumption, a basic understanding of the Transaction failed.

### 2. Trial Court Remedy

Park argues that the trial court erred in fashioning its remedy, because it granted rescission without explaining how the rescission was equitably analyzed in light of his counterclaims. Park also argues the trial court erred in granting rescission and refund of the $60,000 option payment because when Graham made the option payment, he became obligated to purchase the Property. Finally, Park argues that the option agreement entitles him to keep the option payment because Graham failed to close by the closing date.[11] Graham disagrees. We conclude that the trial court properly rescinded the contract and refunded the $60,000 option payment.

"Contract rescission is an equitable remedy in which the court attempts to restore the parties to the positions they would have occupied had they not entered into the contract." Bloor v. Fritz, 143 Wn. App. 718, 739, 180 P.3d 805 (2008). We review a trial court's fashioning of equitable remedies for an abuse of discretion, even on appeal from summary judgment. SAC Downtown Ltd. P'ship

---

[11] In addition to these arguments, Park again argues that Graham breached the Financing Addendum by not applying for an assumption, and that the trial court improperly refunded Graham the $60,000 payment because it included $10,000 of nonrefundable earnest money. We address these arguments in Section II.A and do not address them again here.

v. Kahn, 123 Wn.2d 197, 204, 867 P.2d 605 (1994); see also Borton & Sons, Inc. v. Burbank Prop., LLC, 9 Wn. App. 2d 599, 612–13, 444 P.3d 1201 (2019) (Lawrence-Berrey, C.J., concurring in part) (citing Keck v. Collins, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015)).

Rescission is an appropriate remedy when performance of a contract becomes impossible. Hornback v. Wentworth, 132 Wn. App. 504, 511–12, 132 P.3d 778 (2006); see also 25 DAVID K. DEWOLF, KELLER W. ALLEN & DARLENE BARRIER CARUSO, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 11:6, at 357–58 (3d ed. 2014).

As discussed above, the doctrine of impossibility discharged Graham's obligations after the basic understanding that the Bank would consider and allow the mortgage assumption failed. Accordingly, we conclude that rescission of the contract and refund of Graham's option payment is justified. We further conclude that the trial court did not abuse its discretion in fashioning its remedy, because by granting a $60,000 repayment, the trial court put Graham in the position he would have been in had he not entered the Transaction with Park.[12]

Park's arguments to the contrary are unavailing. Park argues that the trial court erred in granting rescission because it did so without explaining how the rescission was equitably analyzed in light of his counterclaims. He does not

---

[12] According to the Chicago Title ledger, not all of the $60,000 payment went to Park. However, Graham asserts that the portions were withheld because they went directly towards making fixes to the Property for which Park was responsible. Park does not contradict Graham's claim.

support this argument with legal authority or meaningful citations to the record,[13] so we decline to consider it. Cowiche, 118 Wn.2d at 809 (arguments not supported by legal authority or citation to the record need not be considered).

Park argues that by making the option payment, Graham became obligated to purchase the Property, so the court cannot refund him the option payment. This argument lacks merit, since Graham's obligations were contingent on the assumption.

Park also argues that the option agreement entitles him to keep the option payment because Graham failed to close. The time is of the essence clause in the option agreement states that in the event that Graham fails to close through no fault of Park's, then the option payment shall be retained by Park. But Graham failed to close because the Bank would not allow assumption, and without the possibility of the assumption, the purpose of Graham's option payment was defeated. Park's argument lacks merit.

C. Attorney Fees

Park appears to argue that the trial court erroneously granted Graham's request for attorney fees and costs. Graham, on appeal, requests an additional award of fees under RAP 18.1. We affirm the trial court's award of fees and grant Graham's request for fees and costs on appeal.

1. Trial Court Fees Award

"A party is entitled to attorney fees on appeal if a contract, statute, or

---

[13] Park does cite to the record when making this argument. However, his citations are to portions of the record that have no bearing on his argument.

recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." Hwang v. McMahill, 103 Wn. App. 945, 954, 15 P.3d 172 (2000). In general, the prevailing party "is one against whom no affirmative judgment is entered." Kyle v. Williams, 139 Wn. App. 348, 356, 161 P.3d 1036 (2007) (internal quotation marks and citations omitted). Whether a party constitutes the "prevailing party" is a mixed question of law and fact that we review under the error of law standard. Hernandez v. Edmonds Memory Care, LLC, 10 Wn. App. 2d 869, 874, 450 P.3d 622 (2019). We review de novo a trial court's award of attorney fees under contract, and review a discretionary decision on fees and the reasonableness of the fee award for an abuse of discretion. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

The PSA entitled reasonable attorney fees and expenses to the prevailing party in any suit concerning the agreement. Here, the trial court entered its attorney fees award under contract and in alternative, on discretionary grounds:

> 6. Plaintiff as the prevailing party in its claim is entitled by the parties' agreements to recovery of reasonable attorney fees and costs.
>
> 7. In addition and/or in the alternative, [Park's] motion for summary judgment and opposition to [Graham's] motion for summary judgment was not well-grounded in fact; not warranted by existing law; and [Park] failed to conduct reasonable inquiry into the legal bases for their claims and defenses in bringing their motion for summary judgment and opposing that of [Graham's].

The trial court also awarded Graham his costs incurred in the litigation.

Park argues that his motion for summary judgment and response to Graham's motion was well-grounded in fact and warranted by existing law. Park

additionally argues that he conducted reasonable inquiry into the legal bases for his claims. But even accepting these arguments against the *discretionary* award of fees, the trial court was justified in imposing attorney fees because the PSA entitles the prevailing party in a suit to reasonable attorney fees. Since the trial court properly granted Graham's summary judgment motion, it properly determined that Graham prevailed and accordingly granted his request for attorney fees and costs. Because the PSA allowed for such an award, the trial court did not err.

2. Appellate Fees

Graham seeks an additional award of attorney fees and costs on appeal. Since we determine the trial court properly granted Graham's motion, he is the prevailing party on appeal, and is entitled to attorney fees and costs under the terms of the contract, subject to his compliance with RAP 18.1.

Affirm.

_Chun, J._

WE CONCUR:

_Dwyer, J._       _Mann, ACJ._