# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CESAR HERNANDEZ, JOSE LUIS MENDOZA, MIGUEL MORALES, ANGEL SOLIS and FRANCISCO CHAVEZ,

Respondents,

v.

EDMONDS MEMORY CARE, LLC,

Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 78818-3-I

DIVISION ONE

PUBLISHED OPINION

FILED: October 21, 2019

LEACH, J. — Edmonds Memory Care LLC (EMC) appeals the superior court's attorney fees award to five laborers who sued EMC after filing a lien claim for unpaid wages against its property. EMC paid these wages after receiving copies of the lien and complaint from the laborers' attorney. RCW 60.04.181(3), the construction lien statute's attorney fee provision, provides a court with discretion to award the "prevailing party in the action" reasonable attorney fees. EMC asserts that the laborers cannot be the "prevailing party in the action" because it did not dispute their wage claims and the court did not award a judgment for them. The laborers claim they are the "prevailing party in the action" because they achieved their intended result, payment of their wages. Based on the ordinary meaning of "prevail" and "action" and the statute's

requirement that it be liberally construed in favor of the parties it protects, we conclude that the statute authorized the superior court to award the laborers attorney fees. We affirm.

FACTS

In December 2016 and January 2017, EMC developed the Cedar Creek senior housing project (project) on its property. Alejandro Sandoval and his company, Sandoval Construction, (together Sandoval) subcontracted with general contractor Koelsch Construction to provide framing labor. Between December 26 and January 9, Cesar Hernández, Jose Luis Mendoza, Miguel Morales, Ángel Solís, and Francisco Chávez did framing labor for Sandoval but were not paid for the days they worked during this two-week period. So these laborers then stopped working on the project.

Crew leader Mendoza tried to contact Sandoval many times about payment. The few times that he made contact with Sandoval, Sandoval responded that he would pay the crew within a few days. Sandoval never paid the laborers. When Mendoza told Sandoval that he would have to take legal action, Sandoval threatened that Mendoza would "get in a lot of trouble" if Mendoza complained to the Department of Labor & Industries (Department) or consulted an attorney. Mendoza also spoke with Koelsch's project superintendent, Scott, about the laborers' unpaid wages. Scott told Mendoza

that Koelsch had already paid Sandoval for most of the work and the laborers would have to talk to Sandoval about their unpaid wages.

Mendoza stated that he and the other crew members are from Mexico and do not speak English well. They know little about the legal system. The laborers learned about their lawyers from friends in construction who had previously received legal help.

On February 9, 2017, the laborers, aided by counsel, filed a lien against EMC's property. On February 20, the laborers' counsel sent EMC copies of the lien and the complaint to be filed to start this lawsuit. They claimed $6,605.10 in unpaid wages. Counsel filed the complaint on February 24. On March 3, EMC sent the laborers' counsel a check for the lien amount, along with a letter thanking counsel for giving EMC notice of the laborers' claims and stating that EMC was not aware of them before counsel's notification. On March 4, the laborers' counsel asked that EMC pay $2,714.00 in legal expenses. EMC offered $500.00 to settle this matter, which counsel rejected.

On March 8, EMC asked that the laborers release their lien to prevent it from impairing the project's financing. EMC and the laborers' counsel signed a "Lien Release and Security Agreement," in which EMC agreed to be personally liable for any attorney fees assessed in exchange for the laborers' agreement to file a lien release:

In consideration of the lien claimants' tendering of an executed lien release, Edmonds Memory Care LLC agrees that it will substitute itself for the liened property and be personally liable if and to the extent that the court in Hernandez v. Edmonds Memory Care LLC rules that attorney fees and/or costs should be awarded in favor of the lien claimants/plaintiffs in that case.

In May, the laborers filed a combined fee and summary judgment request. They asked for $8,206 in incurred legal expenses plus future reply and oral argument expenses. The superior court awarded the laborers $7,000 in attorney fees, relying on RCW 60.04.181;[1] it found that the laborers "are the prevailing parties in an action because they filed their complaint in the instant action and recovered 100% of the lien wages sought in their complaint." EMC sought reconsideration. The superior court denied reconsideration and further reasoned,

> The Court takes issue with [EMC's] argument that there is no "prevailing party." While uncontested, this does not change the simple fact that [the laborers] did "win." The Court believes that often the filing of a complaint helps to focus parties on their disputes. Whether the case is actively contested affects the discretion regarding the amount of fees to award but still here, [the laborers] "prevailed."

The court denied reconsideration "without ruling on [the laborers'] alternative requested relief of summary judgment on the lien claim."

EMC appeals.

---

[1] The court's order refers to RCW 60.04.161 but appears to be relying on RCW 60.04.181.

ANALYSIS

The laborers claim they are entitled to attorney fees based on the plain language of RCW 60.04.181(3), the legislative purpose of chapter 60.04 RCW, and policy considerations. EMC responds that the trial court's attorney fees award is inequitable. We address these arguments in turn and affirm the trial court.

Plain Language

EMC claims that the plain language of RCW 60.04.181(3), providing a court with discretion to award attorney fees to the "prevailing party in the action," means a party cannot be the prevailing party unless another party contested its claims and the court entered a favorable judgment on the claims. The laborers respond that this language requires only that the prevailing party achieve its intended result.[2] We agree with the laborers.

---

[2] The laborers cite Gonzales v. CarMax Auto Superstores, LLC, 845 F.3d 916, 917-18 (9th Cir. 2017) (court order), involving a California consumer protection statute under which "'[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation'" (alteration in original) (quoting Cal. Civ. Code § 1780(e)). In holding that the statute did not bar Gonzales from recovering attorney fees, the Ninth Circuit noted that because the statute "does not define the term 'prevailing plaintiff,' California courts have 'adopt[ed] a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level. Under that approach, the court exercises its discretion to determine the prevailing party by analyzing which party realized its litigation objectives.'" Gonzales, 845 F.3d at 918 (alteration in original) (quoting Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 50 Cal. Rptr. 3d 273, 281-82 (2006)).

Statutory interpretation presents an issue of law that this court reviews de novo.[3] Who is a "prevailing party" presents a mixed question of law and fact that this court reviews under the error of law standard.[4] "The purpose of statutory interpretation is to determine the intent of the legislature."[5] When interpreting a statute, a reviewing court first looks to its plain language.[6] In the absence of a statutory definition, this court gives a term "its plain and ordinary meaning ascertained from a standard dictionary."[7] This court also discerns plain meaning from the ordinary meaning of the language at issue, the context of the statute that includes the provision, related provisions, and the statutory scheme as a whole.[8] This court "considers the statute within the entire scheme of other statutes, presuming the legislature enacts legislation in light of existing law."[9] If a

---

The laborers claim that California's approach is consistent with the plain meaning of the attorney fees statute at issue here. But EMC correctly contends that this case is unhelpful to this court because the Ninth Circuit's interpretation of the plain language of a California statute is not relevant to a plain language analysis of different language in a Washington statute.

[3] Burien Town Square Condo. Ass'n v. Burien Town Square Parcel 1, LLC, 3 Wn. App. 2d 571, 574, 416 P.3d 1286, review denied, 191 Wn.2d 1015 (2018).

[4] Kyle v. Williams, 139 Wn. App. 348, 356, 161 P.3d 1036 (2007).

[5] Burien, 3 Wn. App. 2d at 574.

[6] Burien, 3 Wn. App. 2d at 574.

[7] State v. Watson, 146 Wn.2d 947, 954, 51 P.3d 66 (2002).

[8] State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

[9] AllianceOne Receivables Mgmt., Inc. v. Lewis, 180 Wn.2d 389, 396, 325 P.3d 904 (2014).

statute's language is plain, a reviewing court will determine the legislature's intent from the words of the statute itself.[10]

"Chapter 60.04 RCW creates a cause of action for suppliers of labor, materials, or equipment to a construction project." Courts often refer to the statute as the "construction lien statute."[11] Here we consider RCW 60.04.181(3), which provides courts with discretion to award attorney fees and costs to prevailing parties in lien actions:

> The court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable.

EMC correctly states that the superior court did not enter an affirmative judgment in favor of the laborers because it did not decide the merits of their wage claims; it entered the judgment awarding the laborers only attorney fees and costs. EMC maintains, "There does not appear to be precedent in Washington where a court has ever considered an award of costs under RCW 60.04.181(3) to a party where no underlying claims were ever adjudicated." The laborers do not contest this. But we note that EMC does not cite any case reversing an award of attorney fees under RCW 60.04.181(3), or any similarly

---

[10] Burien, 3 Wn. App. 2d at 574.
[11] Inland Empire Dry Wall Supply Co. v. W. Sur. Co., 189 Wn.2d 840, 843, 408 P.3d 691 (2018).

worded statute, because the court did not award a judgment on an underlying claim to the party recovering fees.

A. *Ordinary Meaning*

First, the laborers observe that the legislature did not define "prevailing party in the action" but contend that the relevant dictionary definitions show that the "prevailing party" means the party who obtained its intended result. Webster's Third New International Dictionary definitions of "prevail" include "(2) to gain victory by virtue of strength or superiority," (3) "to be or become effective or effectual," and (4) "to urge one successfully."[12] Black's Law Dictionary definitions of "prevail" include (1) "[t]o obtain the relief sought in an action; to win in a lawsuit" and (2) "[t]o be commonly accepted or predominant."[13] Webster's definitions of "action" include (1) "a legal proceeding by which one demands or enforces one's right in a court of justice" and (2) "a judicial proceeding for the enforcement or protection of a right, the redress or prevention of a wrong."[14]

The laborers contend that these definitions show that they were the "prevailing party in the action" because their lien and the lawsuit they filed to enforce it produced the intended result, payment for their labor. They are in a better economic position after starting their lawsuit than they were beforehand.

---

[12] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1797 (2002).
[13] BLACK'S LAW DICTIONARY 1438 (11th ed. 2019).
[14] WEBSTER'S at 21.

EMC does not contest the laborers' assertions about the ordinary meaning of "prevail" and "action." It does not identify any dictionary definitions that support its position about the meaning of "prevailing party in the action." And it provided the laborers with their intended result, money for their labor. We agree with the laborers that the ordinary meaning of "prevailing party in the action" does not require that a court have awarded a party a judgment for that party to have prevailed.

*B. Related Provisions*

EMC claims that other fee shifting statutes show that RCW 60.04.181(3) does not authorize a court to award fees if it does not award a judgment on some underlying claim. It relies on authority stating, "In general, a prevailing party is one who receives an affirmative judgment in his or her favor."[15] It cites two attorney fees statutes to support its proposition that to be a "prevailing party," the opposing party must have at least denied the other party's right to relief.

First, EMC cites RCW 4.84.330, which authorizes an award of reasonable attorney fees to the prevailing party if a contract or lease provides for them. This statute defines "prevailing party" as "the party in whose favor final judgment is rendered." RCW 60.04.181(3) does not include any similar definition. Second, EMC cites RCW 39.08.030, authorizing a court to award attorney fees against a

---

[15] Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997).

surety on a contractor's public works bond only when "a surety has such an adverse interest in a case that it might use its superior financial position to continue the suit to the disadvantage of the opposing party."[16]

The laborers counter with citations to other fee shifting statutes without a definition of "prevailing party." They agree that RCW 4.84.330 requires a court to enter a final judgment before awarding attorney fees. But they note that similar to RCW 60.04.181(3), some fee shifting statutes do not condition an award of attorney fees on a final judgment and, instead, authorize a court to award attorney fees to the prevailing party in the action. The laborers cite, for example, RCW 18.27.040(6), relating to construction bond litigation and authorizing an award of reasonable attorney fees to the prevailing party "in an action filed under this section against the contractor and contractor's bond or deposit." In McGuire v. Bates,[17] this court held that this statute authorized a fee award to a settling party and rejected a claim that she was not the prevailing party "because there was no judgment." And subsection (10) of this statute requires that the prevailing party give the Department a copy of the final judgment and order or the "dispositive settlement documents." This shows that the legislature intended that

---

[16] Lakeside Pump & Equip., Inc. v. Austin Constr. Co., 89 Wn.2d 839, 847, 576 P.2d 392 (1978); RCW 39.08.010, .030.

[17] McGuire v. Bates, 147 Wn. App. 751, 756-57, 198 P.3d 1038 (2008) rev'd on other grounds, 169 Wn.2d 185, 234 P.3d 205 (2010).

"prevailing party in the action" include a party who obtained a favorable result in litigation by settlement rather than judgment.

The laborers also cite RCW 70.105D.050(5)(a), relating to hazardous waste cleanup. It states, "Any person may commence a civil action to compel the department to perform any nondiscretionary duty under this chapter. . . . The court may award attorneys' fees and other costs to the prevailing party in the action." And they rely on Boeing Co. v. Lee.[18] There, this court held that the Industrial Insurance Act provision[19] authorizing attorney fees on appeal in a worker's compensation case allows the trial court to award fees to a worker or beneficiary whose right to relief is sustained when the employer voluntary dismisses the appeal on the first day of trial.[20] This court relied, in part, on our Supreme Court's holding that depending on the text and purpose of the statute at issue, whether a prevailing party exists is not necessarily dependent on an affirmative judgment being entered.[21]

---

[18] 102 Wn. App. 552, 555, 8 P.3d 1064 (2000).
[19] RCW 51.52.130.
[20] RCW 51.52.130; Lee, 102 Wn. App. at 554.
[21] Lee, 102 Wn. App. at 555-56 (discussing Andersen v. Gold Seal Vineyards, Inc., 81 Wn.2d 863, 868, 505 P.2d 790 (1973), in which our Supreme Court reasoned that because the legislature enacted the long-arm statute (RCW 4.28.185) to facilitate service on out-of-state defendants, it must have intended that a defendant who "prevails" is ordinarily one against whom no affirmative judgment is entered).

The fee shifting statutes that the laborers cite undermine EMC's assertion that a party cannot be the "prevailing party in the action" unless it receives a favorable a judgment or court decision or the opposing party denies the merits of its underlying claim.

*C. Statutory Scheme*

EMC next asserts that certain provisions of the lien statutes show the legislature's intent to protect owners. Our Supreme Court has stated, "Given that attorney fees statutes may serve different purposes, it is important to evaluate the purpose of the specific attorney fees provision and to apply the statute in accordance with that purpose."[22]

EMC notes that RCW 60.04.031 generally requires that a lien claimant give the owner a prelien notice about the claimant's lien rights. But this statute exempts "[l]aborers whose claim of lien is based solely on performing labor."[23] This exemption applies here. EMC also cites RCW 60.04.091, which requires that all lien claimants record their lien and give the owner a copy of it within 14 days of recording. Otherwise, they forfeit any right to attorney fees and costs against the owner under RCW 60.04.181.[24] Although EMC does not contest that the laborers complied with this notice requirement, EMC asserts that the laborers

---

[22] Brand v. Dep't of Labor & Indus., 139 Wn.2d 659, 667, 989 P.2d 1111 (1999).
[23] RCW 60.04.031(2)(b).
[24] RCW 60.04.091.

"eviscerated the spirit and intent of RCW 60.04.091 by commencing their lien foreclosure suit before EMC had an opportunity to even be aware of the lien or the underlying claims."

But the legislature directed that specific sections of the construction lien statute, including the attorney fees provision, "are to be liberally construed to provide security for all parties intended to be protected by their provisions."[25] And the statute protects "any person furnishing labor" by authorizing that person to file a lien for the contract price of labor.[26] Although, as discussed above, the statute imposes a notice requirement for a laborer's lien claim, this requirement does not make the statute any less protective of laborers or require a court to construe it any less liberally in their favor. And, unlike some statutes, it does not require that lien claimants wait a specified period of time before filing their lawsuit to enforce the lien. The laborers note that the legislature has required a settlement or correction window in some statutes, citing RCW 39.08.030. As we noted earlier, this statute authorizes attorney fees against a surety on a contractor's public works bond, but it prohibits attorney fees if the claimant brings the action before "the expiration of thirty days following the date of filing of the notice."[27] So the legislature has demonstrated with chapter 39.08 RCW that it

---

[25] RCW 60.04.900; see also Inland Empire, 189 Wn.2d at 844.
[26] RCW 60.04.021.
[27] RCW 39.08.030(1)(b).

will say so when it intends to require a delay between recording a lien and starting a lawsuit to enforce it.

And the laborers again rely on Lee, in which this court upheld an award of attorney fees under the Industrial Insurance Act,[28] in part because of the act's purpose of ensuring adequate representation for injured workers; so "a worker who has been forced by an employer to retain an attorney to defend a favorable board decision should be permitted to seek reasonable attorney fees."[29] EMC correctly states that unlike Boeing, it never opposed the laborers' wage claims and therefore did not force them to incur fees to prevail. But the purpose of the fee shifting provision in the construction lien statute is similar to that in the Industrial Insurance Act: to ensure that the issue of attorney fees does not prohibit the protected party from receiving the full benefit of the statute's protections. As reflected in their counsel's declaration, the laborers had incurred over $2,000 in litigation fees and costs before being paid by EMC. Denying them their attorney fees would deny them the protection of the construction lien statute.

The plain language of the construction lien statute, including its ordinary meaning, related provisions, and the statutory scheme, does not require that EMC oppose the laborers' entitlement to wages for the trial court to have

---

[28] Ch. 51.52 RCW.
[29] Lee, 102 Wn. App. at 558.

discretion to award the laborers attorney fees. The laborers "prevailed" in the commonsense meaning of the word because they recovered their unpaid wages.

Policy Considerations

Practical considerations support our interpretation of the construction lien statute. The laborers' counsel has presented uncontroverted evidence that laborers often do not have the resources to hire attorneys and attorneys will not handle many of their wage claims on a contingency fee basis because of the amount of the claims. So a fee shifting statute provides a reasonable way to provide laborers with access to courts to enforce their right to be paid for work they have performed. This court recognized some of these concerns in Lee; it noted that denying a worker an award of attorney fees under the Industrial Insurance Act when the employer voluntary dismissed the appeal on the first day of trial "would mean that an injured worker may have difficulty retaining an attorney to expend the time and resources necessary to defend the worker's claim."[30] The declarations of Jimmy Matta with the Pacific Northwest Regional Council of Carpenters and David Mark with the Washington Wage Claim Project and counsel for the laborers also reiterate these concerns.

Matta stated in his declaration that he assists Latino construction workers trying to recover wage claims. He stated that immigrant construction workers'

---

[30] Lee, 102 Wn. App. at 558.

rights are routinely violated, and "[i]t is very, very, very rare that . . . immigrant construction worker[s are] able to enforce [their] rights" because they do not know their rights and "tend to have little education." He stated that the Department will not assist workers with their lien rights and "[i]t is almost impossible for these workers to find attorneys who will take their cases." He believes that one of the reasons so few attorneys will take workers' cases is because they are concerned about payment: the workers typically cannot afford to pay for representation and their claims tend to be small, so a contingency fee is not a practical form of payment. Matta also stated, "It is next to impossible to get [general contractors or owners and developers] to do a darn thing."

Similarly, Mark stated that since beginning his outreach efforts in 2000, he has been unable to persuade other attorneys to take construction laborers' lien claims. He also noted that the Washington Wage Claim Project depends entirely on attorney fees for funding.

EMC claims that it would be inequitable to require owners to pay attorney fees when, like EMC, they do not contest the laborer claimants' lien claims. But the legislature has taken a different approach to protecting owners from lien claims. RCW 60.04.250 provides,

> The department of labor and industries shall prepare master documents that provide informational material about construction lien laws and available safeguards against real property lien claims. The material shall include methods of protection against lien claims,

-16-

including obtaining lien release documents, performance bonds, joint payee checks, the opportunity to require contractor disclosure of all potential lien claimants as a condition of payment, and lender supervision under RCW 60.04.200 and 60.04.210. The material shall also include sources of further information, including the department of labor and industries and the office of the attorney general.

This information allows owners like EMC to make decisions about whom to hire, how to structure contract payments to the general contractor, and when to negotiate a contractual right to indemnify themselves against liability. Owners may also require lien releases and certification of payment. In addition, during the pendency of a lien claim, owners have a statutory right to withhold payment to or demand payment from the general contractor.[31] And because chapter 18.27 RCW requires contractors to be licensed and bonded, owners can learn from the Department about a contractor's claim history. The record does not show that EMC took any measure to ensure that laborers on its project were paid

---

[31] RCW 60.04.151 states, in relevant part,

During the pendency of the [lien claim] action, the owner may withhold from the prime contractor the amount of money for which a claim is recorded by any subcontractor, supplier, or laborer. In case of judgment against the owner or the owner's property, upon the lien, the owner shall be entitled to deduct from sums due to the prime contractor the principal amount of the judgment from any amount due or to become due from the owner to the prime contractor plus such costs, including interest and attorneys' fees, as the court deems just and equitable, and the owner shall be entitled to recover back from the prime contractor the amount for which a lien or liens are established in excess of any sum that may remain due from the owner to the prime contractor.

-17-

or to protect itself from lien claims. Among laborers, subcontractors, general contractors, and owners, laborers often have the least bargaining power, are the least able to pay for litigation, and are the most vulnerable to economic abuse.

These considerations support an award of attorney fees to laborers.

## Motion for Reconsideration

EMC also claims that the trial court erred in denying its motion for reconsideration. This court reviews a trial court's denial of a motion for reconsideration for an abuse of discretion.[32] Because we affirm the superior court's order awarding the laborers attorney fees, the superior court did not abuse its discretion by denying EMC's motion for reconsideration on this issue.

## Appellate Attorney Fees

The laborers request attorney fees on appeal, citing RCW 60.04.181(3)[33] and RAP 18.1. RAP 18.1(a) allows a reviewing court to award a party reasonable attorney fees if applicable law grants a party the right to recover them. RCW 60.04.181(3) authorizes a court to award the prevailing party attorney fees at the trial level and on appeal. The laborers have prevailed on appeal, so we grant their request for attorney fees, subject to their compliance with RAP 18.1(d).

---

[32] McCallum v. Allstate Prop. & Cas. Ins. Co., 149 Wn. App. 412, 419-20, 204 P.3d 944 (2009).

[33] Respondents mistakenly cite RCW 60.04.183(c)(3), which is not a section within chapter 60.04 RCW.

## CONCLUSION

We affirm. Principles of statutory construction and policy considerations support the trial court's attorney fees award to the laborers under RCW 60.04.181(3).

_Leach, J._

WE CONCUR:

_Smith, J._                    _Schindler, J_