IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PARK PLACE MOTORS, LTD., a Washington corporation, | No. 81640-3-I |
| Appellant/ Cross-Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| ELITE CORNERSTONE CONSTRUCTION, LLC, a Washington limited liability company; LINVILLE LAW FIRM, PLLC, a Washington professional limited liability company; LAWRENCE BALLIS LINVILLE and JANE DOE LINVILLE 1, his spouse and the marital community comprised thereof, DAVID E. LINVILLE and JANE DOE LINVILLE 2, his spouse and the marital community comprised thereof; and CHRISTIAN LINVILLE and JANE DOE LINVILLE 3, his spouse and the marital community comprised thereof, | |
| Respondent/ Cross-Appellant. | |

COBURN, J. — After Elite Cornerstone Construction, LLC (Elite) obtained a writ of garnishment with Park Place Motors (PPM) as the judgment debtor, PPM filed a separate lawsuit challenging the garnishment and then voluntarily dismissed the suit. Under RCW 6.27.230, the garnishment attorney fee provision, the superior court awarded attorney fees and costs to Elite after the

Citations and pin cites are based on the Westlaw online version of the cited material.

dismissal. PPM appeals and Elite cross-appeals, arguing that the superior court should have granted Elite's request for additional attorney fees and costs incurred after the superior court's initial award.

For the purposes of RCW 6.27.230, PPM's separate action constituted a controversion of garnishment and Elite was the "prevailing party" after the court granted PPM's action to voluntarily dismiss its action. Thus, Elite established a basis to request attorney fees and costs under the garnishment fee provision. However, Elite requested its fees in PPM's dismissed lawsuit. Elite did not establish entitlement for a fee award under the causes of action brought under that cause number. Given this holding, we deny Elite's cross-appeal. Therefore, we affirm in part, reverse in part, and remand for the trial court to vacate its order of attorney fees and costs under the PPM action cause number.

## FACTS AND PROCEDURAL HISTORY

There are no relevant disputed facts. PPM, a car dealership, hired Elite to paint a commercial building. PPM eventually replaced Elite with another contractor and refused to pay Elite money that Elite believed it was owed.

In September 2019, Elite sued PPM (Elite Action) in King County Superior Court and obtained a judgment against PPM for a total of $134,035.30 under cause number 17-2-14665-0.

In November 2019, Elite, through counsel at the Linville Law Firm, PLLC, obtained a writ of garnishment from the superior court against Banner Bank for the portion of the judgment that PPM had not satisfied. Banner Bank held the

deposit account for PPM. Banner Bank signed the answer to the writ of garnishment on or around November 25, 2019.[1]

On December 5, 2019 under cause number 19-2-32231-4 (PPM Action), PPM sued Elite, Linville Law Firm, PLLC, and three attorneys at the Linville firm[2] in an action separate from the garnishment proceedings. PPM alleged causes of action for conversion and wrongful garnishment.[3]

On December 27, 2019, an attorney for Elite, Christian Linville, filed an application for judgment and order to pay in the Elite Action, stating, in relevant part, that "[t]here is no unresolved exemption claim and *there is no controversion*." (Emphasis added.)

The same day, the superior court issued a written judgment and order to pay in the Elite Action, which ordered PPM to pay Elite a judgment of $131,062.05 plus $465.00 in costs. Banner Bank paid the judgment from PPM's

---

[1] Elite's law firm, Linville Law Firm, received a copy of the answer on December 2, 2019. The record does not establish the exact date the answer was filed with the court or when PPM received a copy of the answer. However, on appeal PPM does not contend that it did not receive Banner Bank's answer or that the answer was somehow late or delayed.

[2] For clarity, we refer to the defendants collectively as Elite.

[3] According to PPM, Elite's garnishment was improper because a third party, NextGear Capital, Inc., had a perfected security interest in the money in the bank account at issue pursuant to a promissory note and security agreement between NextGear and PPM ("NextGear Security Agreement"). PPM alleged that at the time Elite caused the writ to be served on Banner Bank, it had actual knowledge of the NextGear Security Agreement and constructive notice that NextGear had filed a UCC-1 financing statement claiming a security interest in all of PPM's assets.

bank account to the court registry, which then turned the money over to Linville Law Firm, PLLC.[4]

In February 2020, PPM moved to voluntarily dismiss the PPM Action without prejudice pursuant to CR 41(a)(1)(B). The following month, the court granted PPM's motion for voluntary dismissal without prejudice and allowed for either party to bring a motion for attorney fees or costs.

Elite, under the cause number for the PPM Action, then moved for attorney fees and costs, requesting a total of $43,968.46 in attorney fees and costs. On April 30, 2020, the superior court entered an order under the same cause number granting Elite's motion. The court listed two grounds for the award: First, that Elite was the prevailing party for the purpose of awarding attorney fees under RCW 6.27.230; and, second, that PPM's actions overall were "factually and legally unsupportable, frivolous, and advanced without reasonable cause in violation of RCW 4.84.185."

PPM moved for reconsideration, and Elite moved for entry of judgment. The superior court entered an order granting in part and denying in part PPM's motion for reconsideration. The court vacated its award for defendants' attorney fees and costs pursuant to RCW 4.84.185. PPM's motion for reconsideration was denied in all other respects and the April 30, 2020 order remained effective.

---

[4] On or around January 17, 2020, well after the deadline to controvert, attorney Henry Dean, on behalf of PPM, filed a declaration controverting Banner Bank's answer to the garnishment in the Elite Action. Dean controverted Banner Bank's answer on essentially the same grounds listed in PPM's complaint. As far as the record before us reflects, Banner Bank did not respond and no party noted a hearing for a determination of whether an issue was presented that requires a trial, as permitted by the garnishment procedures at RCW 6.27.220.

Elite had requested attorney fees and costs in opposing PPM's motion for reconsideration; the superior court denied Elite's request for these additional fees. PPM then filed a response opposing Elite's motion for entry of judgment; Elite replied.

On June 19, 2020, the superior court entered a judgment awarding Elite $43,968.46 in attorney fees and costs in the PPM Action. The post-judgment interest rate was listed at 12 percent per annum.

PPM appeals; Elite cross-appeals.

DISCUSSION

The disputes here are solely about attorney fees and costs. PPM argues that the superior court erred by granting Elite its attorney fees and costs in PPM's action pursuant to RCW 6.27.230. In contrast, Elite's cross-appeal argues that the trial court erred by not awarding it additional attorney fees and costs incurred for having to respond in the superior court proceedings after the trial court's initial award of attorney fees on April 30, 2020.

We apply a two-part standard of review to a trial court's award or denial of attorney fees: (1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity, and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion. Falcon Properties LLC v. Bowfits 1308 LLC, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020) (citing Gander v. Yeagar, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012)).

The issue in PPM's appeal is whether the trial court erred by granting Elite its attorney fees and costs in the PPM Action pursuant to RCW 6.27.230.

RCW 6.27.230 provides "*Where the answer is controverted*, the costs of the proceeding, including a reasonable compensation for attorney's fees, *shall be awarded* to the *prevailing party*. . ." (Emphasis added.) Thus, to be awarded attorney fees under the statute, the answer must be "controverted" and the party requesting fees must be the "prevailing party." PPM argues that Elite meets neither of these requirements.

As a threshold issue, PPM argues that Elite should be judicially estopped from arguing that PPM controverted Banner Bank's answer to Elite's writ of garnishment. PPM relies on the fact that, after PPM filed its action, an attorney for Elite filed an application for judgment and order to pay in the Elite Action stating in a declaration that "there is no controversion."

Elite contends that PPM waived this argument below because it raised judicial estoppel for the first time in its reply brief in support of reconsideration on June 4, 2020. Elite never had the opportunity below to respond to PPM's new judicial estoppel argument and the superior court did not address it.

PPM incorrectly claims it raised the judicial estoppel argument in its response opposing Elite's motion for an entry of judgment. In fact, PPM does not even mention "judicial estoppel" in its response brief opposing Elite's motion for an entry of judgment.[5]

---

[5] While PPM did raise the fact that Elite's attorney previously declared there was no controversion, PPM did so only to argue that the attorney violated

We agree with Elite that PPM waived its judicial estoppel argument and decline to address it.  See Blueberry Place Homeowners Ass'n v. Northward Homes, Inc., 126 Wn. App. 352, 362, 110 P.3d 1145 (2005) (declining to address party's argument that opposing party's bad faith litigation conduct provided an independent basis to award attorney fees because, although the issue of the alleged bad faith litigation had been raised below, it was not addressed by the trial court).

*A.  Controversion*

PPM argues that it did not "controvert" Banner Bank's garnishment answer within the meaning of RCW 6.27.230 because it brought an entirely separate action for "conversion" and damages under 42 U.S.C. § 1983.

RCW 6.27.210 provides the following procedure to controvert a garnishee's answer:

> If the garnishee files an answer, either the plaintiff or the defendant, if not satisfied with the answer of the garnishee, may controvert within twenty days after the filing of the answer, by filing an affidavit in writing signed by the controverting party or attorney or agent, stating that the affiant has good reason to believe and does believe that that answer of the garnishee is incorrect, stating in what particulars the affiant believes the same is incorrect.

We previously recognized that filing an affidavit is not the only way a party may controvert a garnishee's answer.  Blair v. GIM Corp. Inc., 88 Wn. App. 475, 945 P.2d 1149 (1997).  In Blair, the issue was whether a judgment debtor "controverted" the garnishee's answer, for the purposes of awarding attorney

---

the Rules of Professional Conduct 3.3 regarding candor to the tribunal. PPM does not continue this line of argument on appeal.

fees and costs under RCW 6.27.230, by filing a motion to quash the writ of garnishment. Id. at 477. The basis of the motion to quash was that the garnishment proceedings were precluded by a stipulation agreement with the judgment creditor. Id. at 477.

We rejected Blair's argument that the garnishment statutes—specifically RCW 6.27.210—mandate the use of an affidavit as the exclusive means of controverting the garnishee's answer: "We find no ambiguity as the statute provides either the plaintiff or the defendant 'may . . . by filing an affidavit' controvert the answer of the garnishee. The word 'may' is permissive and not mandatory and shows in the context of this statute an elective right to use the affidavit procedure." Id. at 480. We explained that although the purpose of the garnishment laws was to simplify procedures, they did not prohibit more involved procedures:

> [T]he garnishment laws were designed to simplify the procedures for remediating judgment creditor/debtor relationships, when confronted with collection problems in garnishment proceedings. We reason the permissive use of this simplified procedure does not exclude the use of a more involved procedure in the form of a motion to quash a garnishment, attacking the validity of an underlying judgment or the ability to collect it.

Id. The court concluded that precedent "demonstrate[s] the court's concern for substance over form regarding controversion of a garnishee's answer," and held that the respondents successfully controverted the answer, and affirmed the trial court's award of attorney fees and costs under RCW 6.27.230. Id. at 481.

The same logic applies here. Although PPM did not use the permissive affidavit procedure in RCW 6.27.210, PPM "controverted" Banner Bank's answer

by filing its action alleging "wrongful garnishment" on or around December 5, 2019.

PPM attempts to distinguish its case from <u>Blair</u> because it filed a separate action and added Elite's attorney as parties to its action. However, PPM fails to provide any legal authority for the proposition that a party cannot controvert the answer in a separate action and add additional parties. Both the permissive language of RCW 6.27.210—"may" file an affidavit—and the reasoning in <u>Blair</u> lead us to conclude that PPM controverted Banner Bank's answer to the writ of garnishment and, thus, the provision for attorney fees and costs under RCW 6.27.230 applies to these circumstances.

B. *Prevailing Party*

While acknowledging that, generally, a party who obtains a judgment is a prevailing party, PPM contends that Elite is not a prevailing party because no judgment was entered after PPM voluntarily dismissed its action.

Who is a "prevailing party" presents a mixed question of law and fact that this court reviews under the error of law standard. <u>Hernandez v. Edmonds Memory Care, LLC</u>, 10 Wn. App.2d 869, 874, 450 P.3d 622 (2019). The purpose of statutory interpretation is to determine the intent of the legislature. <u>Id.</u> This court also discerns plain meaning from the ordinary meaning of the language at issue, the context of the statute that includes the provision, related provisions, and the statutory scheme as a whole. <u>Id.</u>

RCW 6.27.230 does not define "prevailing party," nor is the term defined elsewhere in the garnishment statutes. "Whether an individual is a prevailing

party after voluntary dismissal turns on whether the claimant meets the conditions of the specific statute that authorizes the fees." AllianceOne Receivables Mgmt., Inc. v. Lewis, 180 Wn.2d 389, 394, 325 P.3d 904 (2014). The parties cite cases defining "prevailing party" after dismissal under other statutes unrelated to RCW 6.27.230; because this issue turns on the specific statute authorizing the fees, we find the cases cited by the parties unpersuasive.

Fees are authorized where the answer to a writ of garnishment is controverted. PPM controverted the answer from Banner Bank claiming conversion and wrongful garnishment. Had PPM challenged the garnishment as part of the garnishment proceedings in the Elite Action, it would have prompted a response from Elite. Regardless of whether PPM would have voluntarily dismissed its controversion in the Elite Action prior to a trial, the end result would have been a judgment and order either in Elite's favor or PPM's favor. In other words, following a controversion one party will prevail and shall be awarded fees and costs.

The legislature's choice to require attorney fees and costs to be awarded to a prevailing party following a controversion suggests that meritless challenges to garnishments and improper garnishments are discouraged. Any lack of a judgment specific to the PPM Action is a direct result of PPM choosing to challenge the garnishment in a separate action and voluntarily dismissing it. If we were to follow PPM's logic, it would create an end run around RCW 6.27.230 allowing parties to avoid paying attorney fees where the legislature has determined that they should.

Elite successfully urged the court to issue a writ of garnishment in its favor. Elite obtained the relief it sought in the action—the garnishment of PPM's bank account to satisfy its debt. Though the PPM Action was under a separate cause number from the Elite Action, for the reasons detailed above, the garnishment statutory scheme indicates that a controversion can take various forms, and we view the "prevailing party" as similarly encompassing the controversion in this case. Elite was the "prevailing party" for the purposes of RCW 6.27.230.

## C.     Post-judgment interest

PPM challenges the 12 percent per annum post-judgment interest rate the court assigned to its judgment awarding Elite attorney fees and costs. PPM argues that because its action, or Elite's argument that the garnishment was controverted, "sounded in tort," the judgment rate should be governed by RCW 4.56.110(3)(b), generally governing interest rates on judgments founded on the tortious conduct of individuals or other entities. PPM offers no legal authority supporting its argument that the judgment of attorney fees and costs here was founded on tortious conduct. As detailed at length above, attorney fees and costs were awarded to Elite pursuant to RCW 6.27.230, the fee-shifting statute for garnishments. The catch-all provision in RCW 4.56.110(6) is the statute that would be applicable, which sets the interest rate at 12 percent per annum. Thus, we reject PPM's argument that RCW 4.56.110(3)(b) applies to judgments under the garnishment provision.

*D.     Right relief; wrong cause number*

Finally, PPM argues that the PPM Action, under cause number 19-2-32231-4, was an independent action for conversion and for violating 42 § U.S.C. 1983 and that neither of these allow for an award of attorney fees and costs to Elite under the circumstances present here. PPM is correct in that Elite did not establish entitlement for a fee award under the causes of action brought in cause number 19-2-32231-4. While Elite did establish a lawful basis for attorney fees under RCW 6.27.230 because PPM controverted the garnishment, the relief Elite requested related to cause number 17-2-14665-0, the garnishment action. Thus, we remand for the superior court to vacate its order of attorney fees and costs under cause number 19-2-32231-4.

Lastly, Elite cross-appeals, arguing that the superior court erred by denying Elite's request for additional attorney fees and costs incurred in proceedings after the court's April 30, 2020 initial order awarding Elite attorney fees. Elite and PPM also both request attorney fees on appeal. Because neither party was entitled to attorney fees in the PPM action below, cause number 19-2-32231-4, we deny Elite's cross-appeal and do not award attorney fees to either party on appeal.

We grant PPM's appeal and deny Elite's cross-appeal.

Reversed in part, affirmed in part, and remanded for action consistent with this opinion.

_Coburn, J._

WE CONCUR:

_Brennan, J_      _Dwyer, J._